UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| CHARLES SCOTT HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-78-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CUMBERLAND RIVER COAL CO., | ) | **& ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Charles Scott Howard alleges that Cumberland River Coal Company violated Kentucky state law by laying him off in retaliation for reporting Cumberland's unsafe mining practices. But because Howard's claim requires construing and applying the terms of a collective bargaining agreement, it is preempted by the LMRA. Unfortunately for Howard, he brought his claim nearly a year and a half too late under the LMRA. Consequently, Cumberland is entitled to summary judgment.

## BACKGROUND

Cumberland River Coal Company, a coal mine operator straddling Virginia and Kentucky, has received numerous honors for its commitment to safety. It was nationally recognized for "achieving America's best underground safety record" in 2006. Def.'s Reply, R. 19 at 3 & n.1. And the Virginia Mining Association has repeatedly recognized Cumberland for its safety excellence in conducting large-surface mining operations within the state. *Id.* at 3 n.1.

But at least one person, Charles Howard, was not impressed with Cumberland's safety accolades. In March 2005, the company hired Howard as a construction crew member at the Band Mill No. 2 mine. Lee Decl., R. 9-2 ¶ 3. This job classification includes a wide range of duties, such as "continuous mine operator, ram car operator, scoop operator, roof bolter, and general laborer." Admin. L. Judge Decision, R. 18-8 at 2. Like the rest of Cumberland's hourly production and maintenance employees, Howard's employment is governed by a collective bargaining agreement ("CBA") between Cumberland and the hourly employees' union, the Scotia Employee Association ("Union"). Lee Decl., R. 9-2 ¶ 4.

During his tenure as an underground coal miner with Cumberland, Howard became a self-proclaimed "well-known mine safety activist." Pl.'s Resp. to Mot. Summ. J., R. 17 at 3. He amassed a "long history of safety-related activities on the job." *Id.* In July 2007, he testified at a public hearing in Lexington, Kentucky, showing the Mine Safety & Health Administration (MSHA) a video he had taken of leaking mine seals at his place of employment. Howard Aff., R. 17-1 ¶ 2. In June 2008, he reported to the MSHA that the mine's primary and secondary "escapeways" were unlawfully obstructed. *Id.* ¶ 6. Later that year and in early 2009, he made a laundry list of safety complaints to his supervisors and MSHA inspectors. *Id.* ¶¶ 7–18, 24. As a result of his reports, the MSHA issued at least three citations to Cumberland during 2008. R. 1-1 at 4 nn. 3–4.

Meanwhile, the ripples of the economic recession struck the coal market in early 2009 and left Cumberland with reduced coal sales, while its coal inventory nearly tripled. Frazier Decl., R. 9-7 ¶ 4. The company soon realized that it needed to reduce the scope of its operations and lay off employees to survive the recession. *Id.* Cumberland's general manager, Gaither Frazier, was instructed to reduce its production of coal to match projected

2

sales.  *Id.*  He, in turn, instructed the production manager, Ricky Johnson, to restructure Cumberland's operations to meet this production goal.  R. 18-8 at 2.  Early in the process, Frazier estimated that reducing production levels would require laying off about sixty-three hourly employees.  Frazier Notes, R. 18-5.

Johnson created a staffing plan in which he determined the number and classifications of jobs needed to keep the mine running at the desired production levels, and Frazier approved this plan.  Lee Decl., R. 9-2 ¶ 6.  This plan would ultimately require Cumberland to lay off sixty-six hourly employees.  Frazier Decl., R. 9-7 ¶ 5.  To determine which employees were entitled to fill the job slots in the staffing plan, the CBA required Johnson and the Human Resources Manager, Valerie Lee,  to apply the following factors in order: first, each employee's ability and skill to "perform the essential functions of the job"; second, seniority; and third, "experience and efficient service."  CBA, R. 9-3 art. IX.  After Johnson and Lee applied the CBA's selection criteria and filled all of the job slots, there were sixty-six hourly employees left without a position and thus laid off.  Lee Decl., R. 9-2 ¶¶ 6–8. Unfortunately for Howard, he was number sixty-six and the most senior employee in the Underground Face job classification to be laid off.  *Id.* ¶ 8.  Around the same time, nineteen salaried employees, to whom the CBA did not apply at all, were also laid off through a different process.  Def.'s Mot. Summ. J., R. 9-1 at 3 n.3.

Before Cumberland announced the layoff, the Union objected to the inclusion of several hourly employees on the layoff list.  Lee Decl., R. 9-2 ¶ 9.  Cumberland reviewed its application of the CBA's selection criteria and modified the list accordingly.  *Id.*  But the Union did not object to Howard's inclusion, so he remained on the layoff list.  *Id.*

3

Ten days after being laid off, Howard filed a grievance with the Union claiming that his selection as one of the sixty-six laid-off employees violated the CBA. R. 9-5 at 1. After determining that it correctly applied the CBA's selection criteria, Cumberland denied Howard's grievance. *Id.* at 2–3. On July 20, 2009, the Union decided not to take Howard's claim to arbitration. Lee Decl., R. 9-2 ¶ 11.

Meanwhile, Howard pursued a complaint with the MSHA on June 11, 2009. He alleged that his layoff was in retaliation for his "numerous protected activities." R. 9-8 at 2. Ultimately, the MSHA reinstated Howard on September 9, 2009, to work in a temporary position at Cumberland because the MHSA determined that Howard's retaliation complaint was "not frivolously brought" under 30 U.S.C. § 815(c)(2). MSHA Comm. Dec., R. 18-8 at 6.

As the most senior employee laid off in his job classification, though, the silver lining for Howard was that he was first to be recalled to a full-time position when one became available. Lee Decl., R. 9-2 ¶ 8. In October 2009, Howard was recalled to his job, where he worked until he was injured on July 26, 2010. *Id.* ¶ 12. Of course, Howard did not receive pay during his layoff. He eventually sued Cumberland on May 2, 2011, under a recently enacted Kentucky statute that prohibits employers from retaliating against miners for reporting or documenting unsafe mining practices. Compl., R. 1-1 ¶ 1 (citing Ky. Rev. Stat. § 352.660). He seeks compensatory and punitive damages for the period of time he was laid off. Howard claims that Cumberland retaliated against him for his safety activism on the job by intentionally choosing to lay off sixty-six employees to ensure that Howard would be included in the layoff. *Id.* ¶¶ 10–11.

4

**DISCUSSION**

Cumberland River argues that summary judgment is appropriate for two reasons. First, Cumberland says that Howard's claim is preempted by the LMRA, making it time-barred.  Second, Cumberland argues that Howard's claim is preempted by the federal Mine Safety and Health Act and must be brought before the Federal Mine Safety and Health Review Commission.

**A.      Preemption by the Labor Management Relations Act**

**1.        Confusion in LMRA Preemption Doctrine**

Section 301 of the LMRA provides original federal jurisdiction over "[s]uits for violations of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a).  The Supreme Court and the Sixth Circuit have interpreted this statute as impliedly preempting the field of state-law claims that are or can be construed as suits for violations of employer-labor organization contracts.  *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983); *Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1030 (6th Cir. 2001) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988) *and Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)); *see also Textron Lycoming Reciprocating Engine Div., Avco Corp. v. UAW*, 523 U.S. 653, 657 (1998) (holding that the LMRA preempts those claims that are "filed *because a contract has been violated*").  This judicially created proposition—that the LMRA impliedly preempts state-law claims that require interpreting a labor agreement—is unassailable as a matter of current doctrine.  But applying this judicially created doctrine is much like battling the mythological hydra: engaging this one proposition causes two problems to spawn in its place.

First, to determine whether a state-law claim requires the interpretation of a CBA, does a court look at just the plaintiff's prima facie case or also to any defenses?  Second, does the answer to the first question depend on whether LMRA preemption arises in the jurisdictional context, such as when ruling on a motion to remand, or in the merits context, such as when ruling on a motion for summary judgment?

The federal courts have disagreed sharply and often about the answers to these two questions, especially with respect to claims analyzed under a burden-shifting framework. *See, e.g.*, *Dunn v. Astaris, LLC*, 292 F. App'x 525, 527 (8th Cir. 2008) ("Some of our cases have applied [the Supreme Court's decision in] *Lingle* in a rather broad way.  Nevertheless, we find the line of cases that has taken a narrower approach to LMRA preemption—asking whether the claim itself, regardless of probable defenses, is necessarily grounded in rights established by the CBA—is the better approach.") (citations omitted). *Compare McCormick v. AT&T Tech., Inc.*, 934 F.2d 531, 537 (4th Cir. 1991) (en banc) (holding that LMRA preemption requires "an inquiry into whether the actor was legally entitled to act as he or she did" and basing its holding of preemption on the employer's use of the CBA as a defense) *with id.* at 544 (Phillips, J., dissenting) ("Where the preemption issue is raised jurisdictionally as a basis for removal, the Court's concentration on the dispositive nature of the claim is realized through application of the well-pleaded complaint rule, but the same claim-centered analysis is followed where preemption has been raised and is addressed as a defense on the merits.") (internal citations omitted).

The Sixth Circuit's en banc decision in *Smolarek v. Chrysler Corporation* seemed to resolve this question--at least within the Sixth Circuit.  879 F.2d 1326 (6th Cir. 1989) (en banc).  *Smolarek* involved the appeals of two different plaintiffs from a district court holding

6

that the LMRA preempted their handicap discrimination claims. *Id.* at 1327. One plaintiff, Smolarek, appealed from an order denying remand; the other plaintiff, Fleming, appealed from an order granting summary judgment in favor of the employer, Chrysler. *Id.* at 1328–29. In concluding that the LMRA did not preempt Smolarek's handicap discrimination claim, the Sixth Circuit asked only whether resolution of Smolarek's prima facie case would require interpreting the CBA. *Id.* at 1333. By contrast, the Sixth Circuit explicitly broadened the scope of its inquiry in answering the same preemption question for an identical claim by Fleming in the context of an appeal from summary judgment. In concluding that the LMRA did not preempt Fleming's claim, the Sixth Circuit looked not just at whether Fleming's prima facie case would require interpreting the CBA, but also whether Chrysler's legitimate, non-discriminatory reason would require interpreting the CBA. *Id.* at 1334. Notably, the Sixth Circuit took this approach on Fleming's appeal from summary judgment even though the case was removed from state court and the only basis for subject matter jurisdiction was complete preemption under the LMRA. *See Fleming v. Chrysler Corp.*, 659 F. Supp. 392, 393 (E.D. Mich. 1987) (explaining that Fleming's motion to remand was denied because the Court held that his claims were completely preempted by the LMRA).

Smolarek therefore drew a stark line between LMRA preemption analysis in the jurisdictional and summary judgment contexts. After *Smolarek*, the rule is this: If LMRA preemption arises as a basis for removal, the Court's inquiry is limited to whether the proof of the plaintiff's prima facie case requires interpreting the CBA. *Alongi v. Ford Motor Co.*, 386 F.3d 716, 727 (6th Cir. 2004), (rejecting, on appeal of a remand order, consideration of a defense that the defendants were "certain to raise"); *Mattis v. Massman*, 355 F.3d 902, 906–

07 (6th Cir. 2004) (analyzing, on appeal of a remand order, only the elements of the plaintiff's prima facie case).   In contrast, if LMRA preemption arises in a motion for summary judgment, the Sixth Circuit's inquiry has not been so limited.   Rather, the Court must consider all aspects of the burden-shifting analysis that would be reached in resolving the merits of the claim.   *See, e.g., Beckwith v. Diesel Tech. Co.*, 215 F.3d 1325, 2000 WL 761808, at *3 (6th Cir. 2000) (unpublished table decision) (holding, on appeal from summary judgment, that the LMRA preempted a wrongful discharge action in which the prima facie case would not require interpreting the CBA, but the employer's defense and the plaintiff's proof of pretext would require interpreting the CBA); *Smolarek*, 879 F.2d at 1334 (holding that, on appeal from summary judgment, the court "must consider the preemption issue, *whether raised in [the] complaint or by [the defendant's] defenses*") (emphasis added).

This distinction between the jurisdictional and merits contexts might seem puzzling. After all, implied field preemption under the LMRA is motivated by the need to avoid "inconsistent interpretations of the substantive provisions" of CBAs by state courts. *Smolarek*, 879 F.2d at 1329.  The risk of inconsistently resolving a defense based on a CBA, and thus the risk of inconsistent interpretations of a CBA by state courts, is the same in both the jurisdictional and merits contexts.   And it cannot really be that the well-pleaded complaint rule prevents consideration of a CBA-based defense in the jurisdictional context yet allows its consideration in the merits context, because implied field preemption is an exception to the well-pleaded complaint rule.   *See, e.g., Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."); *DeCoe v. Gen. Motors. Corp.*, 32 F.3d 212,

8

216, (6th Cir. 1994) ("In order to make the [determination whether resolution of a state law claim requires interpreting a CBA], the court is not bound by the 'well-pleaded complaint' rule, but rather, looks to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort.").

In any event, the en banc decision in *Smolarek* controls this Court's decision.  As such, because the LMRA preemption question arises in this case on a motion for summary judgment, the LMRA preempts Howard's claim if resolving his prima facie case, Cumberland's legitimate, non-discriminatory reason, or Howard's proof of pretext require interpreting the CBA.

### 2.    The LMRA Preempts Howard's Claim.

Having clarified what the proper analysis is, the Court's application of that analysis to Howard's complaint is much more straightforward: the LMRA preempts Howard's retaliatory discharge claim.  The Sixth Circuit has developed a two-part test to determine whether the LMRA preempts a claim.  A plaintiff's claim is preempted if either (1) the claim requires the court to construe the terms of a CBA, or (2) the right at issue is created by the CBA.  *DeCoe*, 32 F.3d at 216.  But the "bare fact" that a court must consult the CBA for information helpful to resolving the claim is not enough to result in preemption.  *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 108 U.S. 399, 413 n.12 (1988)).  The "meaning of [the CBA's] terms" must be at dispute.  *Id.*

Howard asserts that Cumberland violated Kentucky Revised Statute § 352.660 by firing him for reporting and documenting unsafe mining practices to and cooperating with the MSHA and the Kentucky Office of Mine Safety & Licensing.  Compl., R. 1-1 ¶ ; *see also* Pl.'s Resp. to Mot. Summ. J., R. 17 at 2.  Because this Kentucky statute was only recently

enacted into law in 2006, whether the LMRA preempts this particular statute is a question of first impression. Indeed, this is one of the first cases to involve Kentucky Revised Statute § 352.660 at all. But the general structure of retaliatory discharge claims is nonetheless a familiar one. Kentucky courts evaluate retaliatory discharge claims using the *McDonnell-Douglas* burden-shifting framework, which involves three stages of proof. *See generally McDonnell Douglas Corp. v. Greene*, 411 U.S. 792 (1973). To establish a prima facie case of retaliatory discharge, a plaintiff must establish that (1) the employee was engaged in a statutorily protected activity; (2) the employer knew of the employee's protected activity; (3) the employee was subjected to an adverse employment action; and (4) there was a connection between the protected activity and the discharge. *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 915 (Ky. App. 2006) (citing *Brooks v. Lexington-Fayette Urban Cnty. Housing Auth.*, 132 S.W.3d 790, 803 (Ky. 2004)). If the plaintiff can establish a prima facie case, then the burden shifts to the employer to give a "legitimate, non-retaliatory reason" for the adverse action. *Id.* at 916. If the employer offers such a reason, then the burden shifts back to the plaintiff to "persuade the trier of fact by a preponderance of the evidence that the employer's explanation was merely a pretext for the retaliation." *Bihl v. Griffin Indus.*, 2010 WL 3191783, at *3 (Ky. App. Aug. 13, 2010) (citing *Dollar Gen. Partners*, 214 S.W.3d. at 916).

Because this case raises LMRA preemption in the summary judgment context, this Court must determine whether Howard's prima facie case, Cumberland's legitimate, non-retaliatory reason, or Howard's proof of pretext requires interpreting the CBA. To establish his prima facie case, Howard must show that (1) he made various safety complaints that were protected under Kentucky Revised Statute § 352.660; (2) Cumberland knew of these

complaints; (3) Howard was terminated; and (4) he was terminated because of his safety complaints. None of these elements involve the CBA.

But Cumberland's defense—that it had a legitimate nonretaliatory reason for laying off Howard—inevitably requires a court to interpret and apply the selection criteria of the CBA. In his complaint, Howard admits that Cumberland's stated reason for discharging Howard was that he was one of the sixty-six employees who were not entitled to fill any job slot in the staffing plan and thus had to be laid off. Compl., R. 1-1 ¶ 6 ("Howard was laid off by [Cumberland], purportedly as part of a reduction in force by the company."). Cumberland first created a staffing plan to determine the number and classifications of jobs needed to meet desired production goals. The company then determined which employees would fill the job slots in the staffing plan by applying the selection criteria and seniority provisions of the CBA. After it finished applying the CBA's factors, there were sixty-six leftover employees who would be laid off—one of whom was Howard. This CBA-based explanation satisfies Cumberland's burden of showing a non-retaliatory reason for discharging Howard.

Undeterred, Howard points to cases holding that various discrimination and retaliation claims are not preempted by the LMRA. Pl.'s Resp., R. 17 at 10–12. But these cases are inapplicable here because the claim at issue in each of these cases involved "nonnegotiable state-law rights" that were "independent of any right" established by a labor agreement. *Smolarek*, 879 F.2d at 1330 (quoting *Allis-Chalmers*, 471 U.S. at 213). For example, in *Lingle*, an employee claimed that his employer discharged him in retaliation for filing a worker's compensation claim in violation of Illinois state law. *Lingle*, 486 U.S. at 401. The employee was also protected from discharge except for "just cause" under the CBA. *Id.* The employer argued that the claim was preempted by the LMRA because a state

court resolving the retaliatory discharge claim would be "deciding precisely the same issue" as construing the CBA's just cause provision: whether there was just cause to fire the employee. *Id.* at 408. The Supreme Court unanimously rejected this argument because the retaliatory discharge claim could be resolved without interpreting the CBA, even though the two analyses would "require addressing precisely the same set of facts." *Id.* at 409–10; *see also Smolarek*, 879 F.2d at 1331 (following *Lingle* in holding that a similar retaliatory discharge cause of action for filing a worker's compensation claim was not preempted by the LMRA).

Unlike these cases, Howard's claim is not based upon a "nonnegotiable" state right that is independent from the CBA. At a high level of generality, a plaintiff's retaliatory discharge claim creates a right not to be retaliated against for certain protected actions regardless of the rights that the CBA gives him—just like *Lingle* and *Smolarek*. But this right is not the one on which Howard bases his claim. As explained above, *supra* p. 12, Howard claims that he was entitled not to have been one of the sixty-six laid-off employees. This entitlement is not an independent state-law right. Instead, it is created solely by the application of the CBA's selection criteria and seniority rights. *Accord Murphy v. Allen Co.*, 2009 WL 1542719, at *3 (E.D. Ky. June 1, 2009) (Coffman, C.J.) (holding that contesting how CBA-created seniority and selection rights are applied is preempted by the LMRA). In other words, his allegations "all involve workplace actions taken under the ostensible authority of the CBA, and seem to be a subtle attempt to present contract claims in tort clothing." *Mattis*, 355 F.3d at 908.

Indeed, Howard's retaliatory discharge claim is remarkably similar to the preempted retaliatory discharge claim in *Beckwith*.[1]  There, both a husband and wife worked for the same company.  *Beckwith*, 2000 WL 761808, at *1.  The husband was injured on the job and filed a worker's compensation claim.  *Id.*  When he went to a scheduled doctor's appointment for his injury, his wife accompanied him to the appointment without first getting permission from the employer for her absence.  *Id.*  A few days later, the employer discharged the wife for violating the employer's attendance policy.  *Id.*  Unsurprisingly, she sued the employer.  *Id.*  In her complaint, she alleged that the employer's reliance on its attendance policy to discharge her was pretext to retaliate against her husband for his worker's compensation claim.  *Id.*  The Sixth Circuit held that the LMRA preempted her claim for wrongful and retaliatory discharge because "a court will have to interpret the CBA, which requires that '[a]ll vacation time off must be pre-approved,' and which permits [the employer] to discipline employees, to see if that defense is valid."  *Id.* at *3.  Distinguishing the Supreme Court's holding in *Lingle* that the LMRA did not preempt a plaintiff's retaliatory discharge claim, the *Beckwith* court pointed to the plaintiff's admission that the employer's "stated reason for terminating her was her 'excessive tardiness'" in violation of the CBA's attendance policy.  *Id.* at *3 n.3.  Howard's retaliatory discharge claim is nearly identical to the one in *Beckwith*.  Like the plaintiff's claim in *Beckwith*, Howard's complaint admits that Cumberland's stated reason for discharging him was a layoff pursuant to the terms of the CBA, Compl., R. 1-1 ¶ 6, and alleges that this layoff was pretext for

---

[1] Of course, the Court is not bound by *Beckwith* because it is an unpublished decision.  *See Sheets v. Moore*, 97 F.3d 164, 167 (6th Cir. 1996) (stating that unpublished opinions "carry no precedential weight" and "have no binding effect on anyone other than the parties to the action").  The Court relies on *Beckwith* and other unpublished opinions only to the extent that their reasoning is "instructive or helpful."  *Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011).

Cumberland's retaliation against Howard for his protected safety activities, *id.* ¶ 7. And also like the plaintiff's claim in *Beckwith*, Howard's claim requires a court to "evaluate whether [Cumberland] terminated [Howard] in accordance with" the layoff selection criteria in the CBA. *Beckwith*, 2011 WL 761808, at *3 n.3. It is therefore preempted.

Consequently, Howard's claim must be construed as if it were originally brought under the LMRA. *See Brown v. Cassens Transp. Co.*, 546 F.3d 347, 364 n.7 (6th Cir. 2008) ("[I]n cases of LMRA preemption, the court must 'recharacterize' the state cause of action as a federal claim and analyze the claim under federal law.") (citing 14B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3722.1 (3d ed. 1998)). In this case, such a claim is time-barred. The LMRA imposes a six-month statute of limitations on § 301 claims. *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1238 (6th Cir. 1993) (citing *DelCostello v. Int'l Bd. of Teamsters*, 462 U.S. 151, 169-72 (1983)). This statute of limitations starts when the plaintiff discovers the acts "giving rise to the cause of action." *Wilson v. Int'l Bd. of Teamsters, Warehousemen, and Helpers of Am.*, 83 F.3d 747, 757 (6th Cir. 1996). Here, the earliest that Howard could have filed an LMRA claim against Cumberland was once the Union chose not to arbitrate his grievance: July 20, 2009. Letter from Cumberland to Union, R. 9-11. Thus, Howard had until six months later on January 20, 2010, to file an LMRA claim against Cumberland. But that date came and went, and it was not until May 20, 2011, that Howard filed his complaint in Letcher Circuit Court—nearly a year and a half after the statute of limitations expired. *See* Compl., R. 1-1 at 1. Therefore, Howard's claim is time-barred and must be dismissed.

**B.     Preemption by Mine Safety and Health Act**

Because the LMRA preempts Howard's claim, and such a claim must be dismissed as time-barred, the Court does not need to decide whether the Mine Safety and Health Act also preempts Howard's claim.

**CONCLUSION**

Accordingly, it is **ORDERED** as follows:

(1)     The defendant's motion for summary judgment, R. 9, is **GRANTED**.

(2)     All scheduled hearings are **CANCELLED**.

(3)     All other pending motions are **DENIED AS MOOT**.

(4)     This case is **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket.   A separate Judgment will be entered contemporaneously with this Memorandum Opinion & Order.

This the 20th day of December, 2011.

**Signed By:**

*__Amul R. Thapar__*

**United States District Judge**